827 F.2d 1329
 TOLLIS INC.; Eyeful, Inc., Plaintiffs-Appellees,
v.
SAN BERNARDINO COUNTY; Board of Supervisors of the County
of San Bernardino; Cal McElwain; Barbara C.
Riordan; Robert Hammock; Larry
Schoelkofp; Dennis R.
Johnston,
Defendants-
Appellants,
and
Robert O. Townsend, Defendant.
 No. 86-6080.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 7, 1987.
Decided Sept. 14, 1987.
 
 John H. Weston, Robert Sarno, G. Randall Garrou, Brown, Weston & Sarno, Beverly Hills, Cal., for plaintiffs-appellees.
 Paul Mordy, San Bernardino, Cal., for defendants-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, BEEZER and HALL, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 The County of San Bernardino (County) appeals the district court's injunction enjoining enforcement of the County's adult business zoning ordinance. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 2
 * In June 1985, the County enacted Ordinance No. 2940, an urgency zoning ordinance applicable to "adult oriented businesses" within the County. In July, the County amended Ordinance No. 2940 through another urgency ordinance, No. 2957 (ordinance). The ordinance was subsequently extended and ultimately made a permanent portion of the San Bernardino County Code without any substantive changes relevant to the case before us.
 
 
 3
 The ordinance states that "adult-oriented businesses," including "adult theater[s]," cannot be located within 1000 feet of any residential land use; place of worship; funeral home; school, park, or playground; or "any other recreational facility or other area where large numbers of minors regularly travel or congregate." Adult theaters are defined as structures "temporarily or permanently used for" the presentation of films or other media or live entertainment emphasizing certain specified sexual activities or anatomical areas.
 
 
 4
 Tollis, Inc. and Eyeful, Inc. (Tollis) operate an adult entertainment establishment in San Bernardino County that offers both adult movies and live entertainment. The ordinance permits Tollis's existing business to continue as a preexisting non-conforming use, but its distance limitations prevented Tollis from opening a new, expanded facility which was already under construction on its site when the ordinance was adopted. In July of 1985, Tollis brought an action challenging the constitutionality of the ordinance and seeking declaratory and injunctive relief. Until such time as the ordinance might be declared unconstitutional, however, Tollis expressed a willingness to conduct its business in such a way as to remain outside of the definition of "adult-oriented business" under the ordinance. Subsequently, Tollis moved for a preliminary injunction, arguing that the ordinance was unconstitutionally vague on its face because it failed to define the extent of use for showing adult films that would be necessary to render a theater an "adult business." In opposing this motion, the County indicated that it construed the ordinance in such a way that a single showing of an "adult motion picture" would make a theater an "adult oriented business" for purposes of the ordinance. In response, Tollis contended that the ordinance as so construed was unconstitutionally overbroad on its face. The district court consolidated the trial on the merits with its ruling on Tollis's motion for a preliminary injunction and issued a permanent injunction enjoining enforcement of the ordinance as overbroad. The County timely appealed.
 
 
 5
 We review a permanent injunction for abuse of discretion or the application of erroneous legal principles. SEC v. Goldfield Deep Mines Co., 758 F.2d 459, 465 (9th Cir.1985). To prevail on appeal, the County must show that there was no reasonable basis for the district court's decision. See Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021-22 (9th Cir.1985), cert. denied, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).
 
 II
 
 6
 The ordinance expired by its own terms on June 16, 1986. As a threshold jurisdictional matter, we must therefore determine whether this appeal is moot.
 
 
 7
 Several times before the expiration of the ordinance, its expiration date was extended. Ultimately, in April of this year, the County Board of Supervisors passed Ordinance No. 3142, which made the ordinance a permanent portion of the San Bernardino County Code. While the new permanent ordinance contains some minor substantive changes from the ordinance, none are relevant to the issue confronting us here. The relevant portions of the temporary ordinance, defining adult theaters and regulating their location, are reproduced word-for-word in Ordinance No. 3142. Since the relevant requirements of the temporary ordinance have been manifestly preserved unchanged in Ordinance No. 3142, the controversy before us is not moot. See In re Bunker Limited Partnership, 820 F.2d 308, 312 (9th Cir.1987).
 
 III
 
 8
 Our resolution of the merits of this case is guided by the Supreme Court's recent opinion in City of Renton v. Playtime Theaters, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (Renton ), which involved a similar challenge to the constitutionality of a zoning ordinance affecting the exhibition of adult movies. Renton establishes a three-step analysis that we apply to such ordinances. We first must determine whether the ordinance is a "time, place, and manner regulation[ ]." Id., 106 S.Ct. at 928. If it is, we must then determine whether it is content-neutral or content-based. Id. If we decide that the ordinance is content-neutral, we must then determine whether the proposed ordinance "is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." Id. at 930; see also Walnut Properties, Inc. v. City of Whittier, 808 F.2d 1331, 1334-35 (9th Cir.1986) (Walnut ) (stating that Renton requires court first to determine predominant purpose of ordinance before assessing its validity as a content-neutral time, place, and manner regulation).
 
 
 9
 Like the ordinance involved in Renton, the ordinance before us is obviously a time, place, and manner regulation, as it does not ban adult theaters altogether. 106 S.Ct. at 928. Because it makes a separate category of a form of protected speech, however, it is less obvious that it is "content-neutral" rather than "content-based" in origin. See id. at 929. We have indicated previously that "[a] regulation is 'content-neutral' if it is 'justified without reference to the content of the regulated speech.' " Kev, Inc. v. Kitsap County, 793 F.2d 1053, 1058-59 (9th Cir.1986), quoting Renton, 106 S.Ct. at 929 (emphasis in original). This requirement is met if the involved ordinance is "aimed to control secondary effects resulting from the protected expression" rather than at inhibiting the protected expression itself. International Food & Beverage Systems v. City of Fort Lauderdale, 794 F.2d 1520, 1525 (11th Cir.1986); see also Renton, 106 S.Ct. at 929-30; Finzer v. Barry, 798 F.2d 1450, 1469-70 n. 15 (D.C.Cir.1986), cert. granted sub nom. Boos v. Barry, --- U.S. ----, 107 S.Ct. 1282, 94 L.Ed.2d 141 (1987); Jones v. Wilkinson, 800 F.2d 989, 996 (10th Cir.1986) (Baldock, J., concurring), aff'd mem., --- U.S. ----, 107 S.Ct. 1559, 94 L.Ed.2d 753 (1987). Our initial determination, therefore, is whether the "predominate (sic) purpose in enacting the ordinance is suppression of first amendment rights" or, instead, the amelioration of deleterious secondary effects. Walnut, 808 F.2d at 1334. If the ordinance is predominantly aimed at the suppression of first amendment rights, then it is content-based and presumptively violates the first amendment. Renton, 106 S.Ct. at 928. If, on the other hand, the predominant purpose of the ordinance is the amelioration of secondary effects, then the ordinance is content-neutral and the court must then determine whether the ordinance passes constitutional muster as a content-neutral time, place, and manner regulation. Id. at 930.
 
 
 10
 The district court provided no express finding on the County's predominant purpose in passing the ordinance. In the particular case before us, however, we need not decide whether or not the ordinance is content-neutral because we conclude that, even if the County's predominant motive was the amelioration of secondary effects, the ordinance fails to meet the third prong of the Renton test.
 
 
 11
 To be acceptable as a content-neutral time, place, and manner regulation, an ordinance must be "designed to serve a substantial governmental interest and allow[ ] for reasonable alternative avenues of communication." Id. We agree that the County has a substantial interest in preventing the deleterious secondary effects often associated with adult theaters. See Walnut, 808 F.2d at 1335. At a minimum, however, there must be a logical relationship between the evil feared and the method selected to combat it. See Young v. American Mini Theatres, Inc., 427 U.S. 50, 80, 96 S.Ct. 2440, 2457, 49 L.Ed.2d 310 (1976) (Powell, J., concurring) (a regulation's "incidental restriction on ... First Amendment freedoms [must be] no greater than is essential to the furtherance of that interest."), quoting United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). The County must show that in enacting the particular limitations it places upon adult theaters, it relied upon evidence permitting the reasonable inference that, absent such limitations, the adult theaters would have harmful secondary effects. See Renton, 106 S.Ct. at 931; Walnut, 808 F.2d at 1335.
 
 
 12
 Here, the County has presented no evidence that a single showing of an adult movie would have any harmful secondary effects on the community. The County has thus failed to show that the ordinance, as interpreted by the County to include any theater that shows an adult movie a single time, is sufficiently " 'narrowly tailored' to affect only that category of theatres shown to produce the unwanted secondary effects." Renton, 106 S.Ct. at 931. Nor do we see how the County could make such a showing, since it is difficult to imagine that only a single showing ever, or only one in a year, would have any meaningful secondary effects. We therefore affirm the district court's injunction against enforcing the ordinance as the County at present interprets it.
 
 
 13
 AFFIRMED.