JANRA ENTERPRISES, INC., Plaintiff,

v.

CITY OF RENO, et al., Defendants.

No. CV–N–93–122–ECR.

United States District Court,
D. Nevada.

Feb. 26, 1993.

**1362**

Roger Jon Diamond, Santa Monica, CA, and Rodney Sumpter, Reno, NV, for plaintiff.

Madelyn Shipman, Chief Deputy City Atty., Reno, NV, for defendants.

### ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff filed a motion for a temporary restraining order and a preliminary injunction (document # 2) requesting that this court enjoin the City of Reno from enforcing RMC § 18.06.300 and from refusing to issue plaintiff a business license. The motion for a temporary restraining order was denied (document # 7) and defendant was given the opportunity to file an opposition to the motion (document # 8). On February 24, 1993 at 10:00 a hearing was held on plaintiff's motion for a preliminary injunction.

*Findings of Facts*

Plaintiff, Janra Enterprises, seeks to open an adult entertainment business which ideally for it would rent adult videos, screen adult videos in a video arcade, and sell books, magazines and novelty items at 195 Kietzke Lane, Reno, Nevada and which would operate twenty-four-hours a day. The City of Reno has refused to issue plaintiff a business license because the proposed store does not comply with the city's zoning regulations. Plaintiff faces two separate zoning problems.

The first zoning problem is that the proposed business does not comply with Reno Municipal Code section 18.06.300. This section makes it unlawful for an adult entertainment business to be established within 500 feet of a residentially zoned district, a school or university, a day care center, a church, a synagogue, a house of worship, a hospital, a nursing home, a post office, a library or a museum. In addition, an adult business may not be within 900 feet of an establishment which holds a liquor license.

The proposed adult entertainment business on Kietzke lane does not comply with RMC § 18.06.300 because it is located 700 feet away from a establishment which holds a liquor license. The location otherwise complies with all the requirements of RMC § 18.06.300.

There are very few, if any, properties in Reno on which plaintiff could open an adult business in compliance with the ordinance. Defendant was able to locate only three parcels of land in the entire fifty-five square miles which make up the city on which an adult business could be operated. One of these lots already has an operating business on it, another faces possible rezoning of immediately adjacent property for residential use and the third requires use of a private easement to reach the public road.

Currently, only one adult bookstore operates in the City of Reno. The testimony suggests that bookstore is in legal noncompliance with RMC § 18.06.300 but is permitted to continue to operate because it was established before that ordinance went into effect and was exempted from its requirements.

The second zoning problem plaintiff faces is that the property in question is zoned for industrial use ("I" zoned). The "I" zone does not allow retail sales and does not specifically allow for video arcades. The "I" zone does, however, permit rentals. In order to operate twenty-four hours a day, plaintiff would still need a special use permit.

The foregoing shall constitute the court's findings of fact.

*Legal Standard for a Preliminary Injunction*

In order to rule on this motion we do not have to determine whether the zoning regulation are unconstitutional. Rather we must only determine whether plaintiffs have met their burden to show a preliminary injunction is appropriate.

Traditionally, the criteria for a preliminary injunction are 1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest. *Los Angeles Memorial Coliseum Com'n v. Nat. Football* 634 F.2d 1197, 1200 (9th Cir.1980).

■ The Ninth Circuit has adopted a sliding scale test to be used as an alternative to the traditional test. To obtain a preliminary injunction, a party must show either 1) a likelihood of success on the merits, the balance of hardships tips in favor of the moving party and the possibility of irreparable injury, or 2) the existence of serious questions going to the merits and the balance of hardships tipping decidedly in the movant's favor. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir.1991). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Diamontiney v. Borg*, 918 F.2d 793 (9th Cir.1990) (quoting *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374 (9th Cir.1985) quoting *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir.1984)).

According to the sliding scale (or continuum) theory represented by this legal standard, the critical element in determining the test to be applied is the relative hardship to the parties. "If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Gilder*, 936 F.2d 417, 422 (quoting *Benda v. Grand Lodge of Int'l Ass'n, etc.*, 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).

*RMC § 18.06.300*

Plaintiff contends that this ordinance is unconstitutional as applied to the property at issue in the action. It argues that the ordinance has the effect of prohibiting adult bookstores in the city of Reno and according to plaintiff, it is entitled to an injunction prohibiting the city from enforcing this statute against plaintiff in this case.

**Likely success on the Merits**

■ The U.S. Supreme Court has established a three-part analysis to determine whether a statute regulating adult entertainment businesses is constitutional. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). First, a court must determine whether the statute is a time, place and manner restriction. Then, a court must determine whether the government has an important or substantial interest in regulating adult entertainment businesses which is unrelated to the suppression of free speech. And, finally, a court must determine whether the incidental restriction on First Amendment freedoms is no greater than essential to further the governments interest. *Tollis, Inc. v. San Bernardino County*, 827 F.2d 1329, 1331 (9th Cir.1987)

■ The parties do not dispute that RMC § 18.06.300 is a zoning regulation and facially, not a ban on adult entertainment businesses. Such regulations are considered time, place and manner restrictions and are not per se unconstitutional. *City of Renton*, 475 U.S. at 45–47, 106 S.Ct. at 928.

■ The defendant must show it has an important and substantial interest in regulating adult entertainment businesses. Although a city cannot regulate adult businesses because it finds the content of their expression offensive, it may regulate to prevent secondary harms caused by these types of business such as increased crime or the creation of a "skid row" area of town. When making the determination that such secondary harms are likely to occur absent regulation, cities must rely on evidence to support their findings. *Id.*, 475 U.S. at 49–51, at 930.

■ The City of Reno points to the preamble of RMC § 18.06.300 to support its contention that it has a important interest in regulating adult entertainment businesses. The preamble states that the city wishes to regulate these types of businesses to prevent circumstances which would have deleterious effects upon the adjacent areas. The city seeks to prevent the concentration of these businesses in a single area and to prevent the location of these businesses near areas frequented by minors. Although these interests are clearly important and are unrelated to the suppression of speech, the city did not submit any evidence to support its assumption that the regulation of these businesses would prevent these secondary harms. However, even if the city had presented such evidence, plaintiff still has shown a likelihood of success on the merits of its attack on RMC § 18.06.300.

The final consideration is whether the means employed by the city are narrowly tailored to effectuate the city's goals and allow for alternative avenues of communication. *Tollis*, 827 at 1332. The city fails on both accounts. First, the city presents no reason as to why an adult entertainment business must be located at least 900 feet from an establishment with a liquor license nor does it present any substantial or important interest which is served by this requirement. Furthermore, the city does not seriously contend that the regulation allows for alternative avenues of communication. Three parcels of land in the entire fifty-five square mile area is hardly constitutionally sufficient for alternative avenues of communication, and none of the three parcels presented seem likely or feasible locations for a commercial business.

At this stage of the litigation, the city has virtually conceded that the requirement that adult businesses be located 900 feet from an establishment with a liquor license is more extensive than necessary to effectuate the city's interests. The city's position and the analysis of the facts as presented to the court show that plaintiff is likely to succeed on the merits of this claim.

### Balance of the Hardships

Each party in this action will suffer a hardship if the court does not rule in their favor. The city clearly suffers a hardship when one of its regulations is invalidated. *Lydo Enterprises, Inc. v. City of Las Vegas,* 745 F.2d 1211, 1213 (9th Cir.1984). The court finds, however, that the plaintiff's hardship would be greater than that of the city. Historically, the federal courts have regarded First Amendment interests as deserving of special protection and the loss of such rights has been viewed as a serious deprivation. *Id.* at 1214. If plaintiff was denied the opportunity to open its store at all, it would lose the opportunity to exercise its First Amendment rights. These harms are considered irreparable. *Id.* Furthermore, while plaintiff is prevent from opening its business, it is losing money. While this harm is clearly a hardship, it is not an irreparable harm. Plaintiff could always be compensated for monetary loses.

The balance of the hardships tip in favor of the plaintiff and there is the possibility of irreparable harm.

### Conclusion

A preliminary injunction is appropriate in this action to prevent the city of Reno from enforcing RMC § 18.06.300. Plaintiff is likely to succeed on its constitutional challenge of this ordinance and if the injunction were not granted, plaintiff may suffer irreparable harm. Finally, the balance of the hardships tips in favor of plaintiff.

### *"I" Zone Regulations*

195 Kietzke Lane is located in an "I" zone which is an area of Reno primarily reserved for industrial use. Enjoining the city from enforcing RMC § 18.06.300 against plaintiff will only allow plaintiff to operate a video rental business. If plaintiff wishes to operate a video arcade and sell lingerie, books magazines and novelty items, it must show that these uses are permitted in "I" zoned areas or it must show that these regulations are unconstitutional. In order to be entitled to preliminary injunction protected it from the requirements of these zoning regulations, Plaintiff must at least show a serious question on the merits and a balance of the hardships which tips decidedly in its favor.

### Likely success on the Merits

■ Local governments have "broad powers to control land use" and "zoning ordi-

nances are presumptively valid." *Lydo*, 745 at 1213. The city clearly has an interest in maintaining an "I" zone. Previously the area was zoned for industrial use but all other less sensitive uses, such as residential and commercial, were also permitted. The city discovered that not enough property was being reserved for industrial uses. In 1989, the "I" zone was created to limit the permissible uses in this zone to industrial use and other uses which would serve the employees working in the area such as convenience stores, fitness centers, restaurants and dry cleaners.

Plaintiff must show that these content-neutral zoning regulations infringe upon its First Amendment rights and are not narrowly tailored to serve the city's interests in the regulations in order to show they are unconstitutional. *U.S. v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

### VIDEO ARCADE

■ Plaintiff wishes to operate what it labels as "previewing" booths allowing customers to deposit quarters or tokens to watch segments of movies. The customer could continue watch the video as long as the customer continued to insert quarters. Plaintiff claims that customers would watch part of a video to determine whether or not they wanted to rent it. Plaintiff presents two argument as to why it should be permitted to operate a video arcade in addition to its video rental operation.

The first argument is that having a video arcade is a part of the business of video rentals in the same way that selling candy is part of the business of operating a movie theater. Plaintiff contends that a video arcade is "part and parcel" of a video rental business and to allow one requires the other.

Although plaintiff's characterization of the arcade is intriguing, we do not find it persuasive. The mere label of the arcade as a "previewing booth" is not enough to convince the court that the arcade is used in the normal process of renting videos. The fact that a customer must pay to "preview" suggests that it is a separate and money-making endeavor for plaintiff rather than merely part of the video rental business. Additionally, customers could watch an entire movie in the arcade if they were willing to pay enough money. These facts do not support

plaintiff's arguments and we do not find the arcade as part of the business of video rentals.

■ Second, plaintiff relies on the zoning codes for the proposition that the city has not regulated adult video arcades and therefore they are not prohibited in the "I" zone. The city contends that "arcades" are specifically permitted in neighborhood commercial zones and that even though video games for children were intended by this regulation that it includes the type of arcade that plaintiff seeks to operate.

We accept neither of these arguments. An adult video arcade which shows video movies does not seem to be akin to an arcade designed for children to play games. The two are similar only in that the both require payment of quarters. The court heard testimony that the planning commission did not contemplate the type of arcade plaintiff intends to operate when writing the regulations on arcades. However, the development service manager, who is responsible for interpreting the zoning regulations, determined that adult video arcades were not permitted in the "I" zone. Plaintiff had the opportunity to appeal this determination and has not done so.

We do not find that because an adult video arcade is not specifically mentioned in the zoning regulations that plaintiff may conduct the activity where ever it wishes. Plaintiff's proposed activity is more closely analogous to a movie theater than to a children's arcade. Plaintiff would not be able to operate a theater in the "I" zone. Furthermore, plaintiff has not shown that the regulations, as interpreted by the city, infringe upon its speech rights or are not narrowly tailored to met its interests. Plaintiff has failed to show that assuming RMC 18.06.300 is at least in part unconstitutional there are not places in the City of Reno where commercial activities such as a movie theater could be operated.

### RETAIL SALES

■ Plaintiff argues it should be entitled to engage in a retail sales business even though the "I" zone does not permit retail sales. Plaintiff suggests that since there is

**1366**

no place in the city where one can legally operate an adult bookstore, it should be able to operate all of the activities of an adult bookstore at the location it purchased. There is no evidence to suggest that such a business in this location would adversely affect any of the surrounding businesses or neighborhood nor is it near an area where minors are frequently present.

Even though this location might not be objectionable were it not for the city's zoning ordinance, plaintiff does not present a persuasive argument as to why it should be exempted from these zoning laws. No showing has been made that if the RMC § 18.06.-300 restriction on the location of adult business near establishments with liquor licenses were struck down that plaintiff would still find it difficult or nearly impossible to find a location for its business. No showing has been made that the regulation against retail businesses in "I" zoned properties adversely impacts plaintiff's speech rights.

### 24–HOUR OPERATION SPECIAL USE PERMIT

Plaintiff also contends it should be granted an injunction permitting it to operate on a twenty-four-hour basis. Plaintiff applied for a special use permit and the permit was denied. The application apparently was denied because it failed to provide adequate information to the planning committee. Plaintiff presents no argument as to how this requirement infringes on its First Amendment rights and why it should get special treatment and be exempt from this requirement.

### Balancing the Hardships

As discussed above, each side has an interest in the outcome of this motion and would be harmed were the court to rule against them. Although the balance of the hardships continues to tip in favor of plaintiff, the hardships do not tip decidedly in favor of plaintiff in respect to its operations in the "I" zone.

### Conclusion

Plaintiff, at this stage has failed to raise a serious question on the merits of these issues. No showing has been made that the "I" zone regulations are anything other than reasonable time, place and manner restrictions. After reading plaintiff's motion, it appears to the court that plaintiff's primary concern was with RMC § 18.06.300. Although plaintiff presented the additional arguments attacking "I" zoning regulations at the hearing, these arguments were not presented in the motion. Perhaps later, either in a motion for summary judgement or at trial, plaintiff will be able to successfully attack these regulations, but not enough evidence or argument was present to convince the court of plaintiff's position at this time.

IT IS, THEREFORE, HEREBY ORDERED that the city of Reno, its agents, employees, servants, officers and attorneys are restrained, enjoined and prohibited, pending entry of final judgement in this case, from enforcing RMC § 18.06.300 against plaintiff, Janra Enterprises and from refusing to issue a business license to plaintiff on that basis. Plaintiff shall be permitted to operate an adult video rental store at 195 Kietzke Lane.