**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

INDEPENDENT LIVING CENTER OF
SOUTHERN CALIFORNIA, INC., a
nonprofit corporation; GRAY
PANTHERS OF SACRAMENTO, a
nonprofit corporation; GRAY
PANTHERS OF SAN FRANCISCO, a
nonprofit corporation; GERALD
SHAPIRO, Pharm. D. doing business
as Uptown Pharmacy and Gift
Shoppe; SHARON STEEN doing
business as Central Pharmacy;
MARK BECKWITH; MARGARET
DOWLING; TRAN PHARMACY, INC.,
doing business as Tran Pharmacy;
JASON YOUNG,
            *Petitioners-Appellees,*

v.

DAVID MAXWELL-JOLLY, Director of
the Department of Health Care
Services, State of California,
            *Respondent-Appellant.*

No. 08-56422

D.C. No.
2:08-cv-03315-CAS-
MAN

16647

INDEPENDENT LIVING CENTER OF
SOUTHERN CALIFORNIA, INC., a
nonprofit corporation; GRAY
PANTHERS OF SACRAMENTO, a
nonprofit corporation; GRAY
PANTHERS OF SAN FRANCISCO, a
nonprofit corporation; GERALD
SHAPIRO, Pharm. D. doing business
as Uptown Pharmacy and Gift
Shoppe; SHARON STEEN doing
business as Central Pharmacy;
MARK BECKWITH; MARGARET
DOWLING; TRAN PHARMACY, INC.,
doing business as Tran Pharmacy;
JASON YOUNG,
            *Petitioners-Appellants,*

                v.

DAVID MAXWELL-JOLLY, Director of
the Department of Health Care
Services, State of California,
            *Respondent-Appellee.*

No. 08-56554

D.C. No.
2:08-cv-03315-CAS-
MAN

ORDER

Filed December 21, 2009

Before: Stephen Reinhardt, William A. Fletcher, and
Milan D. Smith, Jr., Circuit Judges.

## ORDER

On July 9, 2009, we handed down an opinion arising out
of these two consolidated cases. *See Independent Living Cen-
ter of S. Cal. v. Maxwell-Jolly*, 572 F.3d 644 (9th Cir. 2009)
(*Independent Living*). Now, nearly five months later, Appel-

lant/Appellee the California Department of Health Care Services Director, David Maxwell-Jolly (Director) moves to vacate that opinion. Despite his earlier vigorous prosecution of the appeal, the Director has changed his view, and now argues that we lacked jurisdiction to decide the appeal he helped advance because the underlying preliminary injunction entered by the district court became moot due to a change in California law. We hereby recall the mandate in this case so we may address the Director's motion, and we deny the motion because we hold that the district court's damages award ensured that both parties retained an interest in the case despite the passage of AB 1183.

## BACKGROUND

In *Independent Living*, we addressed an issue raised by AB 5, which added §§ 14105.19 and 14166.245 to the California Welfare and Institutions Code. These sections combined to reduce payments under California's Medi-Cal fee-for-service program to various health care providers by ten percent. *Id.* at 649. The cuts were scheduled to take effect on July 1, 2008. *Id.* We held that in implementing the rate reductions mandated by AB 5, the Director violated 42 U.S.C. § 1396a(a)(30)(A) (hereafter § 30(A)). *Id.* at 652. We also held that the Appellees/Appellants (Independent Living) were entitled to retroactive relief, in the form of monetary damages, because the state had waived sovereign immunity. *Id.* at 662.

The Director now advises us that AB 1183 became effective on September 30, 2008, and amended § 14105.19(b)(1) to provide that the ten percent rate reductions previously called for in AB 5 would end on February 28, 2009. AB 1183 also added § 14105.191, which provided for either one percent or five percent rate reductions, depending on the service provider. AB 1183 is the subject of ongoing litigation, including at least three appeals soon to be argued before our court based on similar § 30(A) claims.

## DISCUSSION

Our jurisdiction depends on the existence of a "case or con-troversy" under Article III of the Constitution. *Public Utils. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996). A claim that has lost its character as a live controversy is consid-ered moot, and thus we lack jurisdiction to consider it. *Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1172-73 (9th Cir. 2009). Whether a live controversy exists depends on whether we can grant effective relief "in the event that [we] decide[ ] the matter on the merits." *NASD Dispute Reso-lution, Inc. v. Judicial Council of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007); *see also Public Utils. Comm'n*, 100 F.3d at 1458 ("The court must be able to grant effective relief, or it lacks jurisdiction and must dismiss the appeal.").

In addition, we have noted the "significant difference between a request to dismiss a case or proceeding for moot-ness prior to the time an appellate court has rendered its deci-sion on the merits and a request made after that time." *Armster v. United States District Court*, 806 F.2d 1347, 1355 (9th Cir. 1987). Accordingly, we have concluded that dismiss-ing an appeal after rendering our decision is an exercise within our discretion. *See id.*; *accord Mfrs. Hanover Trust Co. v. Yanakas*, 11 F.3d 381, 384 (2d Cir. 1993) (denying a joint motion to vacate where the parties sought vacatur of an appel-late court decision rather than a district court judgment and the motion was not made while the appeal was pending).

Adherence to such principles is particularly important in cases involving government actors. Our holding in *Armster*, in which we refused mandamus to vacate an earlier decision on the ground of mootness allegedly caused by a change in the government's position, underscores this point. As we explained in that opinion:

> In the case of the government, heads of administra-tive agencies and other public officials could as a

> matter of course cause the withdrawal of decisions establishing unfavorable precedents or vindicating individual rights by complying with those decisions before the mandate issues. Such a result would be inconsistent with the manner in which our system of checks and balances is intended to operate.

806 F.2d at 1355-56. The same would apply to any change in the government's position, including legislative or executive branch changes, regardless of their cause, and regardless of whether the mandate had issued, as well as to any change in circumstances resulting from such governmental action.

The Director argues that AB 1183 rendered the appeal in these cases moot, because at the time we entered our decision, there was "nothing to enjoin." According to the Director, this controversy involved only injunctive relief, which was settled when the ten percent rate reductions ended on February 28, 2009. We disagree.

In *Independent Living*, we held that the injunction entered by the district court constituted retroactive relief "requir[ing] the State to pay monetary compensation to affected providers." 572 F.3d at 660-61. On August 18, 2008, the district court enjoined enforcement of the rate reductions for services provided on or after July 1, 2008. *Id.* at 650. On August 27, the district court amended that order because it believed that its August 18 order violated the state's Eleventh Amendment sovereign immunity since it did not provide for only *prospective* injunctive relief. *Id.* at 650. We reversed the district court's August 27 order, *id.* at 662, concluding that even though the district court's order provided for retroactive relief, and did not fall under the *Ex parte Young* exception to sovereign immunity for prospective injunctive relief, *id.* at 661, since the Director had waived sovereign immunity, Independent Living was entitled to money damages for the Director's past conduct, "extend[ing] to all services covered by that injunction and provided on or after July 1, 2008," *id.* at 663;

*see id.* at 661 ("Even if a plaintiff seeks damages for past conduct, sovereign immunity will not insulate a state from suit in state court, provided the state has previously consented to be sued in state court under like circumstances.").

Accordingly, the Director's reliance on *Bunker Ltd. Partnership v. United States*, 820 F.2d 308, 311 (9th Cir. 1987) is misplaced. In *Bunker* we held that "[w]here intervening legislation has settled a controversy involving *only* injunctive or declaratory relief, the controversy has become moot." *Id.* (emphasis added). This was not such a case. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469, 478 n.1 (1989) (case not rendered moot where plaintiff argued it was entitled to damages pursuant to expired ordinance); *Alvarez v. Smith*, 558 U.S. ___, No. 08-351, Slip Op. at 5 (2009) (case rendered moot where plaintiffs sought "only declaratory and injunctive relief, *not damages*") (emphasis added). The district court's damages award ensured that both parties retained an interest in the case despite the passage of AB 1183, which merely provided that the ten percent rate reductions would not continue past February 28, 2009. *Cf. New England Health Care Employees Union v. Mount Sinai Hosp.*, 65 F.3d 1024 (2d Cir. 1995) (district court's injunction of enforcement of Connecticut health care statute not mooted by passage of new law where the state had an interest in recouping over $1 million it was enjoined from collecting). Thus, both parties had a " 'concrete interest in the outcome of the litigation.' " *Id.* (quoting *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984)).

Furthermore, "[a]lthough we are only permitted to interpret the old statutory provision that is before us, if the new statutory provision has manifestly not changed the law, a controversy arising under the old statutory provision will be capable of repetition under the new one. If so, the controversy is not moot." *Bunker Ltd.*, 820 F.3d at 312; *accord Nat'l Ass'n of Neighborhood Health Centers, Inc. v. Mathews*, 551 F.2d 321, 339 (D.C. Cir. 1976) (rejecting mootness where "the new statute, in pertinent part, appears quite similar to the old one"

(footnote omitted)). While we express no view as to the ongoing litigation with respect to AB 1183, the very existence of that litigation is further evidence that this controversy is "capable of repetition." In fact, Independent Living has challenged the new law on essentially the same legal theory. Thus, whatever changes the Director has undertaken with respect to § 14105.191 do not convince us that the controversy arising under § 141015.19 is moot.

While it is clear that this case was not moot at the time of our decision, we feel constrained to comment on the circumstances surrounding the Director's bringing this "new" law to our attention. AB 1183 became effective on September 30, 2008, yet the Director waited more than a year to file the instant motion. Though we heard argument in *Independent Living* on February 18, 2009, just ten days before the new rate reductions were to end, the Director said nothing about the pending termination. The Director now "regrets" the delay in bringing this issue to our attention and asserts that counsel did not become aware of it until preparing a "potential" petition for certiorari in the United States Supreme Court. This explanation is belied by the record of proceedings in this case. On June 1, 2009, over a month before we issued our opinion in this case, the Director filed his reply brief in the Supreme Court seeking a petition for certiorari respecting our earlier decision in *Independent Living Center of S. Cal., Inc. v. Shewry*, 543 F.3d 1050 (9th Cir. 2008). We are particularly troubled by a footnote contained in that brief. It provides:

> The case is not moot. After the Ninth Circuit's order on July 11, 2008, the district court enjoined some of the reductions mandated by AB 5. *See Independent Living Ctr. of S. Cal. v. Shewry*, No. CV 08-3315 CAS, 2008 WL 3891211 (C.D. Cal. Aug. 18, 2008). Petitioner's appeal of the district court's order is pending in the Ninth Circuit. *As respondents note, a subsequent enactment (AB 1183) amended California Welfare and Institutions Code § 14105.19 to sun-*

> *set the reductions on February 28, 2009, and*
> *enacted a new set of smaller reductions to take their*
> *place, see id.* § 14105.191. While that makes respon-
> dents' claim for injunctive relief moot, the appeal
> presents a live controversy because the injunction
> forced the state to pay providers hundreds of mil-
> lions of dollars more in Medi-Cal reimbursements
> than the state would have had to pay had AB 5
> remained in full force. The Ninth Circuit's decision
> regarding the preliminary injunction will determine
> whether the state is entitled to recoup those extra
> payments. And a decision by this Court that respon-
> dents lacked a private cause of action would likewise
> mean that AB 5 was improperly enjoined, thereby
> entitling the state to recoup those monies the state
> was wrongly forced to pay.

(emphasis added). Not only has the Director now taken the
exact opposite position regarding mootness, he has feigned
ignorance of precisely the facts described in the above foot-
note. The California Rules of Professional Conduct prohibit
members of the bar from misleading the judiciary through any
false statement of fact or law. CALIFORNIA RULES OF
PROFESSIONAL CONDUCT R. 5-200 (2009). We find the Direc-
tor's representation through the Attorney General that he only
recently became aware of, in his words, the "jurisdictional
problem" created by AB 1183, to be a clear violation of Rule
5-200, and gives us pause about accepting the veracity of
future pleadings filed by the Attorney General on behalf of
the Director, if not more generally.

Granting the Director's motion would not be a wise exer-
cise of our discretion. Both our decision in *Armster* and the
Second Circuit's decision in *Manufacturers Hanover* identi-
fied the abuses that would result from vacating an appellate
court decision following its issuance. While both cases
involved conduct occurring after the appeals had been
decided, their underlying concerns are applicable here. *See*

*Mfrs. Hanover Trust Co.*, 11 F.3d at 384 (reasoning that vacating an appellate court's judgment "would allow the parties to obtain an advisory opinion of the court of appeals in a case in which there . . . may no longer be, any genuine case or controversy"); *Armster*, 806 F.2d at 1355 (explaining that vacating the decision would deprive the petitioners of a decision "that adjudicated properly presented questions concerning their specific constitutional rights"). Vacating the opinion would neither be in the public interest, nor would it be fair to the parties to the litigation. However, because we hold that this case was not rendered moot, we deny the Director's motion on that basis. The mandate shall reissue immediately.

**DENIED.**